IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON SCUTT, | CIV. NO. 20-00137 JMS-RT |
| Plaintiff, | ORDER (1) DISMISSING COMPLAINT WITH LEAVE TO AMEND IN PART, (2) DENYING MOTION TO FILE UNDER SEAL, AND (3) DENYING APPOINTMENT OF COUNSEL |
| vs. | |
| STATE OF HAWAII UNEMPLOYMENT INSURANCE DIVISION; DEPARTMENT OF HUMAN SERVICES BENEFIT, EMPLOYMENT AND SUPPORT SERVICES DIVISION (BESSD), | |
| Defendants. | |

## ORDER (1) DISMISSING COMPLAINT WITH LEAVE TO AMEND IN PART, (2) DENYING MOTION TO FILE UNDER SEAL, AND (3) DENYING APPOINTMENT OF COUNSEL

## I. INTRODUCTION

On May 1, 2020, this court issued an Order dismissing pro se Plaintiff

Jason Scutt's ("Plaintiff") Complaint with leave to amend (the "May 1 Order").

ECF No. 6.[1]  On May 11, 2020, Plaintiff filed a First Amended Complaint

("FAC") against Defendants the State of Hawaii "Unemployment Insurance

---

[1] The May 1, 2020 Order also granted Plaintiff's application to proceed in forma pauperis and denied appointment of counsel.  ECF No. 6.

Division (UID)" and the "Department of Human Services" ("DHS") "EBT foodstamps (BESSD)"[2] (collectively, "Defendants"), that includes a "Motion to File Under Seal" and a section titled "Appointment of Counsel."  ECF No. 7.  For the reasons discussed below, the court (1) DISMISSES the FAC with leave to amend in part, (2) DENIES the Motion to File Under Seal, and (3) DENIES appointment of counsel.

## II.  <u>STANDARDS OF REVIEW</u>

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and order the dismissal of any complaint that is "frivolous or malicious; . . . fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to dismiss sua sponte an in forma pauperis complaint that fails to state a claim); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

---

[2] BESSD refers to the DHS Benefit, Employment and Support Services Division.

2

In considering whether a complaint fails to state a claim, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

A district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendant fair notice of the wrongs allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). "Nor does a complaint suffice if it tenders

naked assertions devoid of further factual enhancement." *Id.* (quotation signals omitted).

Plaintiff is appearing pro se; consequently, the court liberally construes the FAC. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).  Liberally construing a pleading, however, does not include acting as counsel for a pro se litigant and supplying essential elements of a claim that were not pled.  *See Pliler v. Ford*, 542 U.S. 225, 231 (2001); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

///

///

///

///

///

///

4

## III.  <u>BACKGROUND</u>[3]

### A.  The Original Complaint

In her[4] original Complaint, Plaintiff alleged that on or about
December 2018, she began receiving temporary disability benefits, was later
"terminated from [her job at the] Carbonaro CPA Firm," and was thereafter unable
to find suitable employment.  ECF No. 1 at PageID #3.  Plaintiff alleged that
although she is permanently disabled and is "unable to type or use [a] computer
without significant pain," her estimated date to return to work was October 20 or
21, 2019.  ECF No. 1-1 at PageID #5-7, 16.  On or about May 2019, Plaintiff
applied for unemployment benefits through the UID website, and as required by
the online form, disclosed that she "needed accommodations for disability."  ECF
No. 1 at PageID #3.  On June 7, 2019, UID denied Plaintiff's claim for benefits
because she was "currently not able . . . and available for work as required by law."
ECF No. 1-1 at PageID #8.  The Complaint alleges that UID's denial also deprived

---

[3] For purposes of screening, facts alleged in the FAC are accepted as true and construed in the light most favorable to Plaintiff.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4] The May 1 Order referred to Plaintiff as male, but the FAC caption lists Plaintiff a "an individual, on behalf of herself."  ECF No. 7 at PageID #60.  Thus, the court refers to Plaintiff as female.

Plaintiff of "accommodation in the form of searching for jobs that [she] would be physically able to perform."  ECF No. 1 at PageID #3.

Plaintiff then applied to DHS/BESSD for "food stamp benefits," but was denied "emergency assistance."  *Id.*  Following a "phone argument with a state employee, who indicated dislike for houlis,"[5] that employee "refused to process the request and instead mailed a denial of benefits letter" that contained incorrect information about Plaintiff's income.  *Id.*  More specifically, the letter intentionally misstated Plaintiff's rental income as $1,300, but "[a]ctual accounting records also provided . . . show [that after deducting expenses, Plaintiff's income was] well below the calculated poverty guidelines."  *Id.*

Liberally construed, the original Complaint alleged an employment discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and discrimination claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12001, *et seq.*, against Defendant UID.  *Id.* at PageID #2.

**B.     The May 1, 2020 Order**

After screening the Complaint, the court dismissed Plaintiff's Title VII and ADA claims for failure to state a claim.  ECF No. 6 at PageID #49-51, 53-

---

[5] The court construed "houlis" to mean "haoles," a term sometimes used to describe Caucasians.

54.  More specifically, the court determined that Plaintiff's Complaint failed

because (with regard to racial discrimination) "it appear[ed] to name the wrong

Defendant," *id.* at PageID #54, and it "include[d] allegations against both UID and

DHS, but . . . fail[ed] to connect each legal claim to specific conduct or policy of a

particular entity or employee of a specific entity.  That is, the Complaint fail[ed] to

set forth each claim along with factual allegations to support each claim as to each

Defendant."  *Id.* at PageID #55.

In addition, the May 1 Order discussed the Complaint's deficiencies

as to specific claims and granted leave to amend only those claims that could

possibly be cured by amendment.  Thus, the May 1 Order dismissed the

Complaint's claim pursuant to Title I of the ADA *without* leave to amend, and

dismissed claims pursuant to Title II of the ADA and Title VII *with* leave to

amend.  *Id.* at PageID #59.

The court advised Plaintiff that if she chose to appeal, she must:

(1) allege the basis of this court's jurisdiction, (2) state
each claim [she] is making, (3) allege all the facts, legal
theories, and exhibits that [her] claims rely upon,
(4) allege what specific injury [she] suffered because of
each Defendant's conduct, and (5) state what specific
relief [she] seeks.  In other words, Plaintiff should
explain, in clear and concise allegations, what each
Defendant did (or failed to do) and how those specific
facts create a plausible claim for relief in reference to a
specific cause of action.  In addition, Plaintiff must
comply with the Federal Rules of Civil Procedure and the

>Local Rules for the United States District Court for the
>District of Hawaii.

*Id.* at PageID #55-56.  The court further advised Plaintiff that an amended

complaint must be complete in itself and may not incorporate or reference portions

of a prior pleading.  *Id.* at PageID #56.  Finally, the court instructed Plaintiff to

"include only one claim per count."  *Id.*

## C.     The FAC

On May 11, 2020, Plaintiff filed her FAC against Defendants UID and

DHS/BESSD.  The FAC realleges that Plaintiff is "permanently disabled;" is

"unable to type or use computer without significant pain;" and that on May 28,

2018, after losing her job at Carbonaro CPA firm, Plaintiff applied for

unemployment benefits through UID's website.  ECF No. 7 at PageID #62; ECF

No. 7-1 at PageID #69-70.  In the course of completing her application, Plaintiff

disclosed that she is disabled, but is able to work with unspecified accommodations

for her disability.  ECF No. 7 at PageID #62.  Plaintiff "uploaded [her] resume,"

provided her education and work history, and verified that she is a licensed CPA.

*Id.* at PageID #63.  On June 7, 2019, UID denied Plaintiff's claim for benefits "due

to her 'inability to work,'" thereby precluding Plaintiff from participating in the

"employment search opportunities provided by the State."  ECF No. 7-3 at PageID

#72.  The FAC alleges that Hawaii law referenced in the letter denying her

application precludes a disabled applicant who is otherwise fully capable to work from obtaining unemployment benefits, but allows a claimant already receiving unemployment benefits to continue to receive such benefits after becoming disabled.  ECF No. 7 at PageID #62.  Thus, Plaintiff alleges that she was discriminated against based on a preexisting disability.  *Id.*  Plaintiff attempted to appeal that denial by calling the phone number provided, but "State employees did not honor the request for appeal."  *Id.*

The FAC alleges that after attempting to appeal denial of UID benefits and apply for "emergency benefits/foodstamps" "one or more State employees" made a "verbal reference to 'haolis' [sic] (Caucasians) . . . via telephone and in public."  *Id.* at PageID #63.  Further, due to a "lack of separation of duties at local State offices," employees allegedly had access to Plaintiff's "medical and/or other private personal information."  *Id.* at PageID #64.  And state employees allegedly "would have also recognized [Plaintiff's] voice to be contrary to traditional male gender or sexual stereotypes . . . , and as such denied her benefits based on this assumption."  *Id.*

In short, the FAC alleges that state employees "deliberately den[ied]" Plaintiff's applications for UID benefits and foodstamps/emergency financial assistance because of her "disability, race, and sex."  *Id.* at PageID #63.  And the FAC alleges that these employees "demonstrated deliberate indifference" because

9

they would have been trained regarding health privacy and discrimination laws and thus were aware of the harm Plaintiff would suffer should her private information be disclosed and her applications denied. *Id.*

Construed liberally, the FAC attempts to allege discrimination claims for violation of Titles I and II of the ADA, and Titles VI and VII of the Civil Rights Act; and a claim pursuant to 42 U.S.C. §1983 for deprivation of her "statutory rights" to "emergency shelter or food subsistence." *Id.* at PageID #61-64. The FAC seeks $400,000 in damages, declaratory relief clarifying her permanent disability status, and unspecified injunctive relief.[6]

## IV. DISCUSSION

The FAC fails to remedy the deficiencies of the Complaint and again fails to state plausible claims.

///

///

---

[6] On the same day that Plaintiff filed the FAC in this action, she also filed a First Amended Complaint in a separate action then pending before United States District Judge Derrick K. Watson, naming the same defendants, and asserting the same claims based on substantially the same underlying factual narrative. *See Scutt v. State of Hawaii BESSD (SNAP Foodstamp Program)*, Civ. No. 20-00138 DKW-RT ("*Scutt II*"), ECF No. 9 (amending action primarily focussed on denial of foodstamp benefits to include denial of UID benefits). On May 14, 2020, *Scutt II* was reassigned to the undersigned pursuant to Local Rule 40.2 governing related cases. *See* Civ. No. 20-00138 JMS-RT, ECF No. 11. The court will issue a separate screening order in that case.

A.    **Rule 8**

The FAC again fails to comply with Rule 8 for the following reasons:

First, the FAC fails to specify which claims are asserted against which Defendants.  Second, the FAC refers to "the State" and "State employees" largely without differentiating whether they work for UID or DHS/BESSD and without naming any individual employee as a Defendant.  Third, although the FAC purports to allege one claim per section, each section includes allegations and/or argument regarding other claims and/or that are not relevant to that section's claim. For example, in the section titled "ADA Title I," the FAC references violations of "Titles VI and VII of the Civil Rights Act of 1964," and seeks injunctive relief based on non-parties' violation of "her statutory rights under 42 U.S.C. Sec. 1983." ECF No. 7 at PageID #61.

Fourth, the FAC fails to include *factual* allegations sufficient to support each claim.  To the contrary, the FAC is replete with allegations that are speculative, conclusory, and often based on conjecture and opinion.  For example, the FAC alleges that the State employee who spoke with Plaintiff on the phone would have recognized that her voice did not conform to "male gender or sexual stereotypes," that state employees generally "shared and used" Plaintiff's "medical and/or other private personal information," and therefore, those state employees discriminated against Plaintiff on the basis of sex.  *Id.* at PageID #64.  The FAC

11

further alleges that state employees would have been trained about health privacy and discrimination policies and therefore, denial of her applications for benefits was deliberately indifferent to the harm to Plaintiff caused by such denials. *Id.* at PageID #64-65. These speculative, conclusory allegations fail to provide any justification for relief.

Fifth, the FAC fails to connect each legal claim to the specific conduct by a particular Defendant or agency. And sixth, the FAC seeks unspecified injunctive relief based on violation of unspecified statutory rights by non-parties. That is, the FAC requests unspecified injunctive relief "in the event that involvement of related parties, related cases, medical/healthcare workers, small local community labor pool with interest in this and other complaints, religious groups, attorneys with conflicts of interest, Healthcare or insurance workers, and any corporate interests continue to violate her statutory rights under 42 U.S.C. Sec. 1983." *Id.* at PageID #61.

In short, the FAC fails to comply with Rule 8's requirements that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a). In addition, for the reasons set forth below, each specific claim in the FAC fails to state a valid claim.

**B.     Title VII of the Civil Rights Act**

Title VII prohibits discrimination based on an individual's "race, color, religion, sex, or national origin" in employment.  *See* 42 U.S.C. § 2000e-2. Thus, as the May 1 Order explained, Plaintiff must allege some connection to an employment relationship.  *See* ECF No. 6 at PageID #49-50 (citing cases).

But once again, the FAC fails to allege any facts showing an employment relationship between Plaintiff and any Defendant, or that any Defendant interfered with an employment opportunity with another employer. Thus, the FAC fails to state a Title VII claim.  The court has already provided Plaintiff an opportunity to allege facts showing an employment relationship and based on the factual narrative alleged, it is apparent that Title VII does not apply to this action.  Thus, granting further leave to amend would be futile.  This claim is DISMISSED without leave to amend.

**C.     Title I of the ADA**

The May 1 Order dismissed Plaintiff's Title I ADA claim without leave to amend, explaining that "because UID is a state agency, it is immune from suit asserting a . . . claim" under Title I of the ADA."  ECF No. 6 at PageID #50-51.  DHS and BESSD are also state agencies, thus, for the reasons set forth in the May 1 Order, they are also immune from suit asserting a Title I ADA claim.

The FAC, however, also attempts to allege a Title I ADA claim for injunctive relief against one or more individual State employees.  *See* ECF No. 7 at PageID #61 ("[T]he individual employees also discriminated on the basis of [Plaintiff's] disability.").

Title I of the ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] privileges of *employment*."  42 U.S.C. § 12112(a) (emphasis added). Thus, at a minimum, Plaintiff must allege an employer-employee relationship.  *See Castle v. Eurofresh, Inc.*, 731 F.3d 901, 906 (9th Cir. 2013) (noting that for a Title I ADA claim, the first issue to resolve is whether the plaintiff has an employment relationship with the defendant); *Fleming v. Yuma Regional Med. Ctr.*, 587 F.3d 938, 942 (9th Cir. 2009) (recognizing that Title I of the ADA "covers all aspects of the employer-employee relationship, but . . . it does not cover other relationships[.]") (citation omitted).

Here, as set forth above, the FAC fails to allege any facts showing an employment relationship, let alone that Plaintiff was or is employed by a Defendant state agency.  Thus, the FAC fails to state a Title I ADA claim.  And for the same reasons that granting leave to amend a Title VII claim would be futile, the court finds that granting leave to amend a Title I ADA claim would also be futile. This claim is DISMISSED *without* leave to amend.

14

**D.     Title II of the ADA**

As set forth in the May 1 Order, to state a Title II ADA claim,

Plaintiff must allege that:

> (1) [she] is an individual with a disability; (2) [she] is
> otherwise qualified to participate in or receive the benefit
> of some public entity's services, programs, or activities;
> (3) [she] was either excluded from participation in or
> denied the benefits of the public entity's services,
> programs or activities, or was otherwise discriminated
> against by the public entity; and (4) such exclusion,
> denial of benefits, or discrimination was by reason of
> [her] disability.

ECF No. 6 at PageID #52 (quoting *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1021

(9th Cir. 2010) (citation omitted), *overruled on other grounds by Castro v. Cty. of*

*L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc)).

The May 1 Order further explained that a "qualified individual with a

disability" is one who, "with or without reasonable modifications . . . meets the

essential eligibility requirements for the receipt of services or the participation in

programs or activities provided by a public entity." *Id.* at PageID #52-53 (quoting

42 U.S.C. § 12131(2)).  And, to recover monetary damages under Title II, Plaintiff

must establish a defendant's "intentional discrimination under a deliberate

indifference standard, which 'requires both knowledge that a harm to a federally

protected right is substantially likely, and a failure to act upon that . . . likelihood.'"

*Id.* at PageID #53 (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

        Here, the FAC fails to identify (1) Plaintiff's specific disability, leaving both the court and Defendants to surmise a particular disability from attached doctor records; (2) what reasonable accommodation Plaintiff needs to meet the statutory definition of a "qualified individual with a disability;" and/or (3) any *facts* showing that denial of Plaintiff's application(s) for UID benefits (including failing to "honor" her appeal) and/or foodstamps/emergency financial assistance was due to discrimination based on disability under the requisite deliberate indifference standard.

        For example, the FAC alleges that Plaintiff is a licensed certified public accountant, but fails to allege facts showing that Plaintiff is otherwise qualified to work with or without accommodation.  And the FAC fails to allege facts showing that Plaintiff was otherwise qualified to receive foodstamps. Further, as to deliberate indifference, the FAC alleges conclusorily that State employees must have been trained about health privacy regulations and discrimination policies and therefore, by denying Plaintiff's applications for benefits, discrimination by Defendants and/or such employees was intentional. ECF No. 7 at PageID #64.  These purely speculative, conclusory allegations do not

suffice to state a Title II ADA claim.  Thus, Plaintiff's Title II ADA claim is
DISMISSED with leave to amend.

**E.      Title VI of the Civil Rights Act**

Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, provides that
"[n]o person . . . shall, on the ground of race, color, or national origin, be excluded
from participation in, be denied the benefits of, or be subjected to discrimination
under any program or activity receiving Federal financial assistance."  The FAC
alleges that one or more State employees made a reference about "haoles."  *Id.* at
PageID #63.  To state a claim under Title VI, Plaintiff must allege that: "(1) the
entity involved is engaging in racial discrimination; and (2) the entity involved is
receiving federal financial assistance."  *Fobbs v. Holy Cross Health Sys. Corp.*, 29
F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v.
Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001) (en banc).  And
the pleading must allege facts supporting a reasonable inference that Defendants'
purported misconduct was racially motivated.  *See Marks v. Santa Rosa City Sch.*,
748 F. App'x. 159, 160 (9th Cir. 2019).

Here, the FAC alleges only that "one or more State employees" made
a "verbal reference to haolis" (sic) "via telephone and in public."  ECF No. 7 at
PageID #63.  It is not clear whether Plaintiff is referring to one or multiple
incidents.  Nor does the FAC allege what was said, the tone or context of the

17

reference, the identity of the speaker(s), and/or the particular state office/agency

for which the speaker(s) worked.  In addition, the FAC does not allege facts tying

the speaker of such reference to the actual denial of Plaintiff's applications for

unemployment and/or foodstamp benefits.  *See, e.g.*, *Fobbs*, 29 F.3d at 1447

(explaining that to state a Title VI claim, the plaintiff must, in part, plead facts

showing racial discrimination); *see also Joseph v. Boise State Univ.*, 667 F. App'x

241 (9th Cir. 2016) (affirming dismissal where plaintiff failed to allege facts

showing that defendant discriminated against her on account of race).

Thus, the FAC fails to state a Title VI claim.  This claim is

DISMISSED with leave to amend.

**F.     Section 1983**

Construed liberally, the FAC attempts to assert a claim pursuant to 42

U.S.C. § 1983 for violation of Plaintiff's "statutory rights" to "emergency shelter

or food subsistence."  ECF No. 7 at PageID #64.  But Defendants UID and

DHS/BESSD are immune from suit asserting a § 1983 claim.

Absent a waiver by the state or a valid congressional override, "[t]he

Eleventh Amendment bars suits for money damages in federal court against a state,

its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't*

*of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *see also Will v. Mich. Dept. of*

*State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her

18

official capacity is not a suit against the official but rather is a suit against the official's office."); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003) ("It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

The State of Hawaii has not waived its Eleventh Amendment immunity for § 1983 claims, *see, e.g.*, *Pitts v. Espinda*, 2016 WL 475137, at *4 (D. Haw. Feb. 8, 2016), and Congress did not intend § 1983 to abrogate a state's Eleventh Amendment immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985). Thus, Plaintiff's § 1983 claims against Defendants are DISMISSED without leave to amend.

The Eleventh Amendment, however, does not bar prospective injunctive relief against individual state officials in their official capacities based on an alleged ongoing violation of federal law. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) ("Although sovereign immunity bars money damages and other retrospective relief against a state or instrumentality of a state, it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law."); *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000)

("[C]ourts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law.").

Here, the FAC does not name any individual state official as a defendant. *See Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1342 (Fed. Cir. 2006) ("When a violation of federal law is alleged, . . . the state official whose actions violate that law is the rightful party to the suit and prospective injunctive relief can only be had against him.") (citation omitted). Thus, to the extent Plaintiff may be attempting to assert a § 1983 claim for prospective injunctive relief against a state official, such claim is DISMISSED with leave to amend.

## G. Leave to Amend

Although the FAC failed to remedy the deficiencies of her Complaint, the court grants Plaintiff leave to amend her pleading one more time to attempt to state plausible claims for relief pursuant to Title II of the ADA, Title VI of the Civil Rights Act, and § 1983 (for prospective injunctive relief only). Plaintiff may not amend claims pursuant to Title I of the ADA, Title VII, and § 1983 (for damages). And Plaintiff may not file any other claims, but may amend the named Defendants to include specific individual state employees.

20

Plaintiff may file a Second Amended Complaint by July 13, 2020 to attempt to cure the deficiencies set forth above.  If Plaintiff chooses to file an amended complaint, she must (1) allege the basis of this court's jurisdiction, (2) state each claim she is making against a specific Defendant, (3) for each claim, allege all the facts, legal theories, and exhibits supporting that claim, (4) allege what specific injury she suffered because of that Defendant's conduct, (5) state what specific relief she seeks, and (6) repeat this process for each Defendant.  In other words, Plaintiff should explain, in clear and concise allegations, what each Defendant did (or failed to do) and how those specific facts create a plausible claim for relief in reference to a specific cause of action.  In addition, Plaintiff must comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Hawaii.

An amended complaint generally supersedes a prior complaint and must be complete in itself without reference to the prior pleading.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).  Claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal,

but claims that are voluntarily dismissed are considered waived if they are not repled).

The amended complaint must state that it is the "Second Amended Complaint," and it may not incorporate any part of the original Complaint or FAC by reference.  Plaintiff may include only one claim per count.  Any cause of action that is dismissed with leave to amend that is not raised in the Second Amended Complaint is waived.  *See id.*  Failure to file an amended complaint by July 13, 2020 will result in automatic dismissal of this action.

## V.  <u>MOTION TO SEAL</u>

Plaintiff moves pursuant to Federal Rule of Civil Procedure ("Rule") 5.2 and Local Rule ("LR") 5.2 to "file under seal considering the graphic material, private health information and other potential conflicts that could arise from related cases."  ECF No. 7 at PageID #66.

Plaintiff's motion is not accompanied by any proposed sealed filing, thus, the motion fails to comply with LR5.2(c), and the court cannot discern what exactly Plaintiff seeks to file under seal.  Plaintiff may, however, be seeking a blanket protective order that allows her to designate future filings in this or other cases that she wants sealed.  To the extent this is her aim, it is not permitted. LR5.2(b) specifically provides that "[a] stipulation or blanket protective order that allows a party to designate matters to be filed under seal will not suffice to allow

the filing of the matter under seal."  Accordingly, Plaintiff's Motion to File Under Seal is DENIED.

## VI.  <u>APPOINTMENT OF COUNSEL</u>

The FAC indicates that Plaintiff has attempted to obtain counsel, but that she has been unable to afford consultation fees or find suitable representation.  ECF No. 7 at PageID #65.  Although Plaintiff does not specifically move for appointment of counsel, the court construes the FAC as making such request.

Generally, "a person has no right to counsel in civil actions."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citation omitted).  Pursuant to 28 U.S.C. § 1915(e)(1), the court "may under 'exceptional circumstances' appoint counsel for indigent civil litigants."  *Id.*; *see also Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) ("The decision to appoint such counsel is . . . granted only in exceptional circumstances.") (citation and internal quotation marks omitted).  "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'"  *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)).  Difficulties that any litigant proceeding pro se would face "do not indicate exceptional factors."  *Wood v. Housewright*, 900 F.2d 1332, 1336 (9th Cir. 1990)).

23

Plaintiff requests appointment of counsel due to the "exceptional circumstances of Covid-19 [which] have prevented [her] from retaining an appropriate attorney on affordable terms." ECF No. 7 at PageID #66. But Plaintiff's inability to obtain counsel does not pose any additional hardship beyond that experienced by any other pro se litigant. *See Wood*, 900 F.2d at 1336. Further, the FAC is dismissed for failure to state plausible claims. That is, Plaintiff has failed to show a likelihood of success on the merits of her claim(s). And Plaintiff appears able enough to articulate the bases for her claims and the relief sought. In short, although Plaintiff is indigent and has made some effort to find counsel, there is insufficient merit to her claim(s) at this time to establish "exceptional circumstances" or to justify appointment of counsel.

Thus, Appointment of Counsel is DENIED without prejudice to refiling if this case has moved well beyond this preliminary stage.

## VII. <u>CONCLUSION</u>

Based on the foregoing, the FAC is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim; the Motion to File Under Seal is DENIED; and Appointment of Counsel is DENIED.

Plaintiff's claims pursuant to Title VII, Title I of the ADA, and § 1983 (except for prospective injunctive relief against an individual State official) are DISMISSED without leave to amend.

24

Plaintiff's claims pursuant to Title II of the ADA, Title VI of the Civil Rights Act, and § 1983 (for prospective injunctive relief against an individual State official) are DISMISSED with leave to amend.

Plaintiff is GRANTED leave to file a Second Amended Complaint to attempt to cure the deficiencies identified above, on or before July 13, 2020. Failure to file a Second Amended Complaint by July 13, 2020 will result in automatic dismissal of this action for failure to prosecute and failure to comply with a court order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 15, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Scutt v. Hawaii Unemployment Ins. Div.*, Civ. No. 20-00137 JMS-RT, Order (1) Dismissing Complaint with Leave to Amend in Part, (2) Denying Motion to File Under Seal, and (3) Denying Appointment of Counsel