IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON SCUTT, | CIV. NO. 20-00137 JMS-RT |
| Plaintiff, | ORDER (1) DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE, AND (2) DENYING APPOINTMENT OF COUNSEL |
| vs. | |
| STATE OF HAWAII UNEMPLOYMENT INSURANCE DIVISION; DEPARTMENT OF HUMAN SERVICES BENEFIT, EMPLOYMENT AND SUPPORT SERVICES DIVISION (BESSD), | |
| Defendants. | |

## ORDER (1) DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE, AND (2) DENYING APPOINTMENT OF COUNSEL

## I. INTRODUCTION

On June 15, 2020, this court issued an Order dismissing pro se Plaintiff Jason Scutt's ("Plaintiff") First Amended Complaint ("FAC") with leave to amend in part (the "June 15 Order"). ECF No. 10.[1] On July 6, 2020, Plaintiff filed a Second Amended Complaint[2] ("SAC") against Defendants the State of

---

[1] The June 15 Order also denied appointment of counsel and Plaintiff's motion to seal. ECF No. 10.

[2] Plaintiff subsequently filed supplemental pleadings on July 23, 2020 and July 29, 2020. ECF Nos. 12, 13. The court liberally construes the SAC as including both supplemental pleadings.

Hawaii "Unemployment Insurance Division" ("UID") and the "Department of Human Services" ("DHS") "Maui Processing Center"[3] (collectively, "Defendants") that includes a section titled "Appointment of Counsel."  ECF Nos. 11, 12, 13.  For the reasons discussed below, the court DISMISSES the SAC with prejudice and DENIES appointment of counsel.

## II.  <u>STANDARDS OF REVIEW</u>

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and order the dismissal of any complaint that is "frivolous or malicious; . . . fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to dismiss sua sponte an in forma pauperis complaint that fails to state a claim); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

---

[3] This appears to be a reference to the Maui Processing Center for DHS's Benefit, Employment and Support Services Division ("BESSD"), a named Defendant in the two previous complaints.

In considering whether a complaint fails to state a claim, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

A district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendant fair notice of the wrongs allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). "Nor does a complaint suffice if it tenders

naked assertions devoid of further factual enhancement." *Id.* (quotation signals omitted).

Plaintiff is appearing pro se; consequently, the court liberally construes the SAC. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). Liberally construing a pleading, however, does not include acting as counsel for a pro se litigant and supplying essential elements of a claim that were not pled. *See Pliler v. Ford*, 542 U.S. 225, 231 (2001); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

///

///

///

///

///

4

### III.  <u>BACKGROUND</u>[4]

**A.**     **Welfare Benefits Offered by the State of Hawaii**

This case arises out of Plaintiff's applications for welfare benefits offered by the State of Hawaii.  Three programs are particularly relevant: Temporary Disability Insurance, *see* Haw. Rev. Stat. ("HRS") § 392-1 *et seq*.; Unemployment Insurance, *see* HRS § 383-1 *et seq.*; and General Assistance, *see* HRS § 364-71.

"Any individual in current employment who suffers disability" is eligible for Temporary Disability Insurance.  HRS § 392-21.  A disability is the "total inability of an employee to perform the duties of the employee's employment caused by sickness, pregnancy, termination of pregnancy, organ donation, or accident[.]"  HRS § 392-3.  An applicant cannot receive Temporary Disability Insurance unless a licensed medical practitioner submits a certification stating that the applicant is disabled.  HRS § 392-26.  Individuals can only receive Temporary Disability Insurance benefits for 26 weeks.  HRS § 392-23.

Unemployment Insurance is available to residents of Hawaii who (1) have lost their job, (2) have registered to work, and (3) are "able to work" and

---

[4] For purposes of screening, facts alleged in the SAC are accepted as true and construed in the light most favorable to Plaintiff.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

"available for work" (the "Work Requirement").  HRS § 383-29.  To satisfy the

Work Requirement, an individual must have "the physical and mental ability to

perform the usual duties of the individual's customary occupation or other work

for which the individual is reasonably fitted by training and experience."  Haw.

Admin. R. § 12-5-35(a)(1).  Unemployment Insurance benefits also last for no

more than 26 weeks.  HRS § 383-24.

Because of their eligibility requirements, the Temporary Disability

program and the Unemployment Insurance program are effectively mutually

exclusive.  Individuals who are completely unable to perform the duties of their

employment (as Temporary Disability Insurance requires) almost certainly lack the

ability to perform the usual duties of their customary occupation or other work that

they are trained to do (as Unemployment Insurance requires).  In other words, in

the usual case, an individual may receive either Temporary Disability Insurance or

UI, but not both.

That dichotomy could leave a gap in the statutory scheme.  A worker

who becomes disabled is eligible for Temporary Disability Insurance.  But an

individual who begins to suffer from the same disability while receiving

Unemployment Insurance cannot receive Temporary Disability Insurance, because

they do not have a job.  At the same time, because of their disability, that

6

individual would be unable to satisfy the Work Requirement and would cease to be ineligible for UI.

To fill this gap, individuals who become disabled while receiving Unemployment Insurance benefits continue to receive those benefits even if their disability prevents them from working.  HRS § 383-29(a)(3).  In addition, Hawaii's General Assistance program provides support for individuals who are disabled and unable to work.  To qualify for General Assistance, Hawaii residents must, *inter alia*, be "ineligible for a comparable federally funded financial assistance program," and be "unable to engage in any substantial gainful employment because of a determined and certified physical, mental, or combination of physical and mental disability."  HRS § 346-71.

**B.     Plaintiff's Applications for Welfare Benefits**

Plaintiff began working for a Hawaii accounting firm in 2017.  *See* ECF No. 11-3 at PageID #112.  In late 2018, she became unable to work because of severe pain on the right side of her body.  *See* ECF No. 11 at PageID #102.  She applied for Temporary Disability Insurance, and her application was approved in December 2018.  ECF No. 11-3 at PageID #112.  Between December 12, 2018 and June 11, 2019 (the full 26 weeks permitted by Hawaii law), Plaintiff received

7

Temporary Disability Insurance.[5]  *Id*.  To be eligible for Temporary Disability Insurance, Plaintiff had to demonstrate that she was unable to work.  *See* HRS §§ 392-3, 392-26.

In May 2019, when her Temporary Disability Insurance benefits were about to expire, Plaintiff's employer terminated her.  ECF No. 11 at PageID #102.  On May 28, 2019, Plaintiff filed an Unemployment Insurance application.[6]  *Id*.  Even though her receipt of Temporary Disability Insurance was conditioned on her continued inability to work, her Unemployment Insurance application indicated that she was able to work and available for work.[7]  *Id.* at PageID #102.

On June 6, 2019, Defendant UID denied Plaintiff's application.  In a letter, UID explained that Plaintiff was not eligible for Unemployment Insurance

---

[5]  The facts relating to Plaintiff's receipt of Temporary Disability Insurance are set forth in a letter from the State of Hawaii Unemployment Insurance Division to Plaintiff.  Because this letter is attached to Plaintiff's SAC at ECF No. 11-3, the court may consider it as part of the SAC.  "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).  Further, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true[.]"  *Id.*

[6]  The SAC alleges that Plaintiff also applied for other benefits, such as food stamps.  ECF No. 11 at PageID #106.  However, the SAC offers few details about her applications for those benefits.

[7]  Plaintiff has not alleged that her condition improved between December 2018 and May 2019.  To the contrary, she refers to her disability as "permanent."  ECF No. 11 at PageID #104.

benefits because it had determined that she was "currently not able to work."  ECF No. 11-3 at PageID #112.  In support of that finding, UID referenced Plaintiff's receipt of Temporary Disability Insurance.  *Id.*  UID also informed Plaintiff that, if she disagreed, she had 10 calendar days to appeal, and that any appeal "must be in writing."  *Id.*; *see also* ECF 11-4 at PageID #113.

After she received UID's decision, Plaintiff called UID to discuss her case.[8]  ECF No. 11 at PageID #102.  Plaintiff alleges that, after an extensive discussion with an unidentified UID employee, the employee "became argumentative and eventually hung up the phone before a resolution could be established[,] and can be heard on the recording using the word 'hoali' as she did so."[9]  ECF No. 11 at PageID #103.  The SAC does not allege that Plaintiff ever filed a written appeal.

## C.    Procedural Background

On March 27, 2020, Plaintiff filed her original complaint.  ECF No. 1.  She alleged that Defendants discriminated against her by denying her applications for welfare benefits.  *Id.*  The court construed her Complaint as asserting claims under Titles I and II of the Americans with Disabilities Act ("ADA") and Title VII

---

[8]  Plaintiff refers to this call as an "appeal."  ECF No. 11 at PageID #102.

[9]  As in its previous orders, the court interprets "hoali" to mean "haole," a term sometimes used to describe Caucasians.

9

of the Civil Rights Act.  ECF No. 6.  After screening the Complaint, the court

issued an order (the "May 1 Order"), dismissing it for failing to state a claim and

failing to comply with the requirements of Rule 8.  *Id.*  The court granted Plaintiff

leave to amend her Title II and Title VII claims.  *Id.*

On May 11, 2020, Plaintiff filed her First Amended Complaint

("FAC").  ECF No. 7.  The court construed the FAC as alleging discrimination

claims under Titles I and II of the ADA and Titles VI and VII of the Civil Rights

Act, and a claim pursuant to 42 U.S.C. § 1983.  ECF No. 10.  After screening the

FAC, the court again dismissed it, but granted Plaintiff leave "to amend her

pleading one more time to attempt to state plausible claims for relief pursuant to

Title II of the ADA, Title VI of the Civil Rights Act, and § 1983."  ECF No. 10 at

PageID #95.  The court also held that "Plaintiff may not file any other claims, but

may amend the named Defendants to include specific individual state employees."

*Id.*

On July 6, 2020, Plaintiff filed the SAC.  ECF No. 11.  Construed

liberally, Plaintiff again alleges that Defendant UID violated Title II of the ADA,

Title VI of the Civil Rights Act, and that UID employees violated § 1983.  *Id.*

Plaintiff also filed two supplemental pleadings.  On July 23, 2020, Plaintiff filed a

"supplemental memorandum" that alleged that DHS violated Title II of the ADA

and that DHS employees violated § 1983.  ECF No. 12.  Then, on July 29, 2020,

Plaintiff filed a second supplemental pleading alleging that Hawaii state court officials violated Title II and § 1983.  ECF No. 13.

## IV.  <u>DISCUSSION</u>

The SAC fails to remedy many of the deficiencies of the FAC and again fails to state plausible claims.

## A.    **Title II of the ADA**

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.[10] As set forth in the May 1 Order, to state a Title II claim, Plaintiff must allege that:

> (1) [she] is an individual with a disability; (2) [she] is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) [she] was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [her] disability.

---

[10] Title II defines a qualified individual as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131.

ECF No. 6 at PageID #52 (quoting *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1021

(9th Cir. 2010) (citation omitted), *overruled on other grounds by Castro v. Cty. of*

*L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc)).

Construed liberally, the SAC alleges Title II claims against three

Defendants: the State of Hawaii's Unemployment Insurance Division, the State of

Hawaii's Department of Human Services, and the Hawaii state judiciary.   None of

those claims is plausible.

### 1.    *Title II Claims Against Defendant UID*

The SAC alleges that UID violated Title II of ADA by denying her

application for Unemployment Insurance benefits.  The SAC has remedied several

of the deficiencies that plagued Plaintiff's previous Title II claims against UID.[11]

However, the SAC again fails to establish the fourth element of a Title II claim.

That element requires Plaintiff to show that UID denied her

Unemployment Insurance application *because of* her disability.   As the SAC

acknowledges, UID informed Plaintiff that it had denied her Unemployment

Insurance claim because she was unable to work, not because she was disabled.

ECF No. 11 at PageID #102, 104; *see also* ECF No. 11-3 at PageID #112 ("You

---

[11] The previous complaints did not comply with Rule 8's requirement that the complaint contain a short and plain statement showing that the pleader is entitled to relief.  Because the SAC has, to some extent, remedied that problem, the court considers the substance of Plaintiff's Title II claims against UID for the first time.

are currently not able to work.").  The SAC nevertheless alleges that the real reason for the denial was Plaintiff's disability.  Plaintiff maintains that because UID stated that she was not able to work "because she was disabled before being admitted to the program," she was "clearly denied her rights under ADA Title II for the sole reason that she had a disability in the first place."  ECF No. 11 at PageID #104-05.

Those allegations could be construed in two different ways.  Plaintiff could be asserting that, because UID rejected her application after concluding that she could not work, and the reason it determined that she could not work was that she was disabled, UID literally denied her application because of her disability.  In other words, Plaintiff could be alleging that the Work Requirement itself is discriminatory if it prevents disabled individuals from receiving Unemployment Insurance benefits.  Alternatively, Plaintiff could be arguing that, because she was disabled, UID did not afford sufficient consideration to her statements that she was actually able to work.  *See id.* at PageID #105.  Under either construction, the Title II claim fails.

If Plaintiff is asserting that Title II prohibits UID from enforcing the Work Requirement against disabled applicants, she is incorrect.  Under Title II, agencies can reject applications from disabled individuals who do not "meet[] the essential eligibility requirements for the receipt of services or the participation in

13

programs or activities provided by [the] public entity." 42 U.S.C. § 12131. "Cases interpreting the 'essential eligibility requirement' language indicate that whether an eligibility requirement is essential is determined by consulting the importance of the requirement to the program in question." *Mary Jo C. v. N. Y. State & Local Ret. Sys.*, 707 F.3d 144, 157 (2d Cir. 2013) (citing *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 930 (8th Cir. 1994)). Most courts have concluded that a requirement is essential if "the 'nature' of the program would be 'fundamentally altered'" without that requirement.[12] *Id.* at 158 (quoting 28 C.F.R. § 35.130(b)(7)) (brackets omitted); *see also Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1036 (6th Cir. 1995) (concluding that, because waiving a requirement would amount to a fundamental alteration under section 504 of the Rehabilitation Act, the requirement was an essential eligibility requirement); *Pottgen*, 40 F.3d at 930-31 (same); *Aughe v. Shalala*, 885 F. Supp. 1428, 1432 (W.D. Wash. 1995) (same); *cf. Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir.

---

[12] The ADA does not define "essential eligibility requirement." The statute's legislative history, however, indicates that the term "reflects the long-standing section 504 principle that, to the extent of the manifestations of a person's disability prevent that person from meeting the basic eligibility requirements of the program" they may be denied access to the program. H.R. Rep. No. 101-485 at 38 (1990), *reprinted in* 1990 U.S.C.C.A.N. 512, 527. In cases interpreting section 504, the Supreme Court had held that the statute did not require entities to accommodate disabled applicants if the accommodation would amount to "a fundamental alteration in the nature of a program." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979).

1996) (citing *Sandison* with approval). *But see Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012) (essential eligibility requirements are those requirements "that bear more than a marginal relationship to the [program] at issue").

The Work Requirement is an essential eligibility requirement of the Unemployment Insurance program. Hawaii's Legislature established a comprehensive and interconnected welfare system that provides different benefits to different groups of people. Disabled individuals and those who cannot work are eligible for Temporary Disability Insurance or General Assistance, while individuals who lose their job but are able to work are eligible for Unemployment Insurance. HRS §§ 346-71, 383-29, 392-3, 392-21. Removing the Work Requirement would fundamentally alter this scheme by removing the barriers between programs that the legislature intended to be separate.[13] Consequently, the Work Requirement is an *essential* eligibility requirement. *See Chandler*, 83 F.3d at 1155 (holding that when a state creates multiple social services aimed at different groups, group membership is an essential eligibility requirement for participation in each program); *see also Aughe*, 885 F. Supp. at 1432 ("Because

---

[13] Further, "[t]he ADA does not require equivalent benefits in different programs." *Chandler*, 83 F.3d at 1155.

15

[waving a requirement] would essentially rewrite the statute, it must be seen as a fundamental alteration in the nature of the program."). Title II does not prevent UID from enforcing the state's statutory scheme. To the extent that the SAC alleges that UID violated Title II by enforcing the Work Requirement against disabled applicants, the SAC has not asserted a cognizable claim.

Alternatively, the SAC may be alleging that UID used discriminatory procedures to determine that Plaintiff was unable to work. According to Plaintiff, she was treated by UID "as a general class of disabled people, who, by . . . definition, are . . . unable [to work] due to . . . simply having a disability." ECF No. 11 at PageID #105. Plaintiff appears to be saying that, once UID determined that she was disabled, it concluded that she was unable to work without examining her abilities or the facts of her case more closely. To support that allegation, Plaintiff points to two documents attached to the SAC: the letter Plaintiff received from UID and a screenshot of UID's website. *See id.*; *see also* ECF No. 11-2; ECF No. 11-3.

Neither document supports Plaintiff's Title II claim. UID's letter informed Plaintiff that:

> Section 383-29(a)(3) Hawaii Revised Statutes provides that, to be eligible for benefits, an individual must be able and available for work. . . .
>
> . . . .

16

> You filed an initial claim for benefits on 05/28/19,
> effective 05/26/19 because you were terminated from
> your last fulltime auditor employment that you had been
> employed with since 07/01/17.  You were out of work
> since 12/02/18 on temporary disability benefits and being
> paid through 06/11/19.  You are currently not able to
> work.

ECF No. 11-3 at PageID #112.  Contrary to Plaintiff's assertions, the letter does

not say that Plaintiff was unable to work because she was *disabled*.  Instead, UID

cited the *temporary disability benefits* Plaintiff received as evidence that she was

unable to work.  There is nothing unusual about that.  Plaintiff's receipt of

Temporary Disability Insurance was conditioned on her inability to work.  *See*

HRS §§ 392-3, 392-23, 392-26.  Thus, her receipt of Temporary Disability

Insurance strongly suggested that she was, in fact, unable to work.  UID's

reference to Plaintiff's Temporary Disability Insurance benefits is not evidence of

discrimination.

Plaintiff also points to UID's website, which states "[i]f you become

ill or disabled AFTER you file an initial claim for benefits, a medical waiver may

apply."  ECF No. 11-2 at PageID #111.  That statement is based on language in

HRS § 389-29(a)(3).  Under Hawaii law, individuals who become disabled while

receiving Unemployment Insurance are exempt from the Work Requirement.  HRS

§ 383-29(a)(3).  Again, that exception ensures that individuals who become

disabled while receiving Unemployment Insurance are treated the same way as

individuals who become disabled while they are employed are treated.  Individuals

who become disabled while working (such as Plaintiff) are eligible for Temporary

Disability Insurance.  HRS § 392-3, 392-21.  Individuals who develop an identical

disability while receiving Unemployment Insurance cannot apply for Temporary

Disability Insurance, because they do not have a job.  *See id.*  To ensure that those

individuals remain eligible for comparable benefits, the statutory exception permits

those individuals to continue to receive Unemployment Insurance even though

they cannot satisfy the Work Requirement.  Neither the exception nor UID's

recitation of it are discriminatory.

   The SAC does not identify any other facts that support Plaintiff's Title

II claims against Defendant UID.  Because she has not alleged any facts that

support a plausible claim that UID discriminated against her by reason of her

disability, Plaintiff has not stated a claim under Title II of the ADA.  The court has

now provided Plaintiff three opportunities to state a claim against Defendant UID.

Plaintiff has failed to do so, and based on the record, it does not appear that

Plaintiff has a viable Title II claim.  Granting further leave to amend would be

futile.  Plaintiff's Title II claim against Defendant UID is DISMISSED without

leave to amend.

### 2.      *Title II Claims Against Defendant DHS*

In her first supplemental pleading, Plaintiff alleges, for the first time, that two DHS employees violated Title II by "refus[ing] to provide . . . an accommodation for [the] hearing disabled" when she applied for food stamps. ECF No. 12 at PageID #118.  Plaintiff does not allege any facts that substantiate that assertion.[14]

As the court has held on two separate occasions, to state a claim, a complaint must allege *facts* that plausibly establish every element of a cause of action.  Because the SAC does not provide any details about the DHS employees' alleged failure to accommodate her disability, Plaintiff has failed to adequately allege the first, second, and fourth elements of a Title II claim.  She has not established: (1) the precise nature of her hearing disability; (2) that she was otherwise qualified for the food stamps program and/or that a reasonable accommodation would permit her to access the program; or (3) that DHS denied her application for food stamps because of her hearing disability.

---

[14]  The supplemental pleadings repeatedly allege that State employees have called Plaintiff to inform her that they have "scheduled unwanted and not-consented-to 'appointments' with the 'State Medical Examiner' (SME)."  ECF No. 13 at PageID #148; *see also* ECF No. 12 at PageID #118.  Plaintiff has not connected these calls to any alleged discrimination.  Moreover, if Plaintiff is applying for social services because of her disability, it is not surprising that state employees are attempting to schedule a physician's appointment to verify that disability.

Plaintiff has failed to state Title II claim against Defendant DHS. Plaintiff has now had three opportunities to allege facts supporting a plausible Title II claim against Defendant DHS. She has failed to do so. Granting further leave to amend would be futile. Plaintiff's Title II claim against Defendant DHS is DISMISSED without leave to amend.

### 3.    *Claims Against State Judiciary Employees*

Finally, in her second supplemental pleading, Plaintiff alleges that two state employees violated Title II by instructing Plaintiff to mail certain legal documents to the appropriate court. ECF No. 13 at PageID #152-53. According to Plaintiff, by informing her that she had sent those documents to the wrong court, the employees ignored her "request for hearing/speaking accommodations," and "demonstrate[d] their [dis]regard for members of a certain class or stereotype." *Id.* at PageID #147.

As an initial matter, these claims violate the June 15 Order. The court held that while Plaintiff could amend her claims against UID and DHS "to include specific individual state employees" that worked for UID or DHS, she could not "file any other claims." ECF No. 10 at PageID #95. The two employees identified in the second supplemental pleading do not work for UID or DHS. Instead, it appears that they are employed by the Hawaii state judiciary. ECF No. 13 at

PageID #152-53.  These claims are not encompassed by the leave to amend the court granted Plaintiff.

Even if the court did consider the allegations in the second supplemental pleading, Plaintiff has not alleged any *facts* that support her conclusory allegations.  As a result, she has failed to adequately allege any of the elements of a Title II claim.  She has not shown (1) the precise nature of her "hearing/speaking" disability or why that disability prevents her from mailing documents to the correct court; (2) the benefits that the state employees prevented her from receiving by enforcing the Hawaii state courts' filing policies; (3) that she was qualified to receive those benefits; or (4) that she was denied access to those benefits because of her "hearing/speaking" disability.

The allegations in Plaintiff's second supplemental pleading fail to state a plausible Title II claim.  Plaintiff has now had three opportunities to allege facts supporting plausible Title II claims, and she has failed to do so.  Granting further leave to amend would be futile.  Plaintiff's Title II claim against the Hawaii state judiciary or its employees is DISMISSED without leave to amend.

**B.     Title VI of the Civil Rights Act**

Plaintiff also alleges that Defendant UID violated Title VI of the Civil Rights Act (42 U.S.C. § 2000d) by engaging in racial discrimination.  Title VI provides that "[n]o person . . . shall, on the ground of race, color, or national origin,

be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  To state a claim under Title VI, Plaintiff must allege that: "(1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance."  *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001) (en banc).

Plaintiff's Title VI claim is based on allegations that, at the end of a phone conversation concerning her application for Unemployment Insurance benefits, an employee of Defendant UID hung up the phone "and can be heard on the recording using the word 'haoli' [sic] as she did so."  ECF No. 11 at PageID #103.  In dismissing a similar claim in the FAC, the court held that Plaintiff had failed to state a claim for several reasons, including (1) the FAC did not provide enough context (such as the speaker's tone) to establish that the speaker was motivated by racial animus, and (2) the FAC did not "allege facts tying the speaker of such reference to the actual denial of Plaintiff's applications for unemployment and/or food stamp benefits."  ECF No. 10 at PageID #92-93.

The SAC has failed to remedy either deficiency.  To provide additional context, the SAC alleges that the speaker used the word "haole" at the end of a long phone call.  ECF No. 11 at PageID #103.  However, the SAC still

does not discuss the speaker's tone or what else was said at the end of the call.  Nor does it allege any other facts that would permit a plausible inference that the speaker was motivated by racial animus.

More importantly, the SAC still has not alleged that the speaker played a role in UID's rejection of Plaintiff's Unemployment Insurance application.  The only allegation that could connect the employee to the rejection is the assertion that Plaintiff spoke to that employee after calling UID to "appeal."  ECF No. 11 at PageID #102-03.  That claim is not plausible.  First, as a general matter, it seems highly unlikely that the UID granted the first employee answering the phone the ability to rule on an appeal.  Second, letters attached to the complaint demonstrate that any appeal must be in writing.  ECF No. 11-3 at PageID #112; ECF No. 11-4 at PageID #113; *see also* Haw. Admin. R. 12-5-93.  Consequently, Plaintiff has failed to plausibly allege that the employee she spoke to had authority over any appeal Plaintiff may have filed.  *See generally Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").  Because the SAC does not provide any other allegations connecting the employee with whom Plaintiff spoke to the denial of her application, even if Plaintiff had alleged that the employee she spoke to was motivated by racial

animus, she still has not alleged that such animus played a role in the denial of her application for Unemployment Insurance benefits.[15]

In sum, the SAC has again failed to allege that Defendant UID denied Plaintiff's Unemployment Insurance application because of racial discrimination. Thus, the SAC has failed to state a Title VI claim. *See, e.g.*, *Fobbs*, 29 F.3d at 1447 (explaining that to state a Title VI claim, the plaintiff must, in part, plead facts showing racial discrimination); *see also Joseph v. Boise State Univ.*, 667 F. App'x 241 (9th Cir. 2016) (Mem.) (affirming dismissal where plaintiff failed to allege facts showing that defendant discriminated against her on account of race). Plaintiff has had three opportunities to allege facts supporting a plausible Title VI claim. She has failed to do so. Granting further leave to amend would be futile. Plaintiff's Title VI claim is DISMISSED without leave to amend.

## C.    Section 1983

Under 42 U.S.C. § 1983, any person who, under color of state law, subjects any citizen of the United States to deprivation of any rights secured by the Constitution or laws of the United States shall be liable to the party injured in an

---

[15] For the same reasons, allegations that "unknown persons who live and work near the State offices" frequently use the word "haole" provide no support for Plaintiff's Title II claims. ECF No. 11 at PageID #106. Those allegations do not establish that any state employees used the word "haole" or provide any relevant context. They certainly do not demonstrate that the state employees who played a role in the denial of Plaintiff's application for Unemployment Insurance benefits were motivated by racial animus.

action at law or equity.  The only rights that the SAC alleges were violated are Plaintiff's rights under Title II of the ADA and Title VI of the Civil Rights Act. *See* ECF No. 11 at PageID #107-08.   Because the SAC has failed to establish a violation of either statute, Plaintiff's § 1983 claims necessarily fail as well.  This claim is DISMISSED without leave to amend.

## D.    Appointment of Counsel

The SAC indicates that Plaintiff has attempted to obtain counsel, but that she has been unable to find suitable representation.  ECF No. 11 at PageID #108.  Although Plaintiff does not specifically move for appointment of counsel, the court construes the SAC as making such request.

Generally, "a person has no right to counsel in civil actions."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citation omitted).  Pursuant to 28 U.S.C. § 1915(e)(1), the court "may under 'exceptional circumstances' appoint counsel for indigent civil litigants."  *Id.*; *see also Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) ("The decision to appoint such counsel is . . . granted only in exceptional circumstances.") (citation and internal quotation marks omitted).  "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'"  *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting

25

*Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). Difficulties that any litigant proceeding pro se would face "do not indicate exceptional factors." *Wood v. Housewright*, 900 F.2d 1332, 1336 (9th Cir. 1990)).

Plaintiff requests appointment of counsel due to the "unusual circumstances" of "her financial situation and the covid19 pandemic[.]" ECF No. 11 at PageID #108. But Plaintiff's inability to obtain counsel does not pose any additional hardship beyond that experienced by any other pro se litigant. *See Wood*, 900 F.2d at 1336. Further, the SAC is dismissed for failure to state plausible claims. That is, Plaintiff has failed to show a likelihood of success on the merits of her claim(s). And Plaintiff appears able enough to articulate the bases for her claims and the relief sought. In short, although Plaintiff is indigent and has made some effort to find counsel, there is insufficient merit to her claim(s) to establish "exceptional circumstances" or to justify appointment of counsel.

Thus, Plaintiff's Request for Appointment of Counsel is DENIED.

///

///

///

///

///

///

# V. **CONCLUSION**

Based on the foregoing, the SAC is DISMISSED without leave to amend pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim; and the Request for Appointment of Counsel is DENIED. The clerk of court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 25, 2020



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Scutt v. Hawaii Unemployment Ins. Div.*, Civ. No. 20-00137 JMS-RT, Order (1) Dismissing Second Amended Complaint with Prejudice, and (2) Denying Appointment of Counsel